May it please the court, Howard Cain for appellants. Your honors, this case, this appeal involves a single, narrow, but critically important issue. The single issue that must be addressed by this court is as follows. When acting in its capacity as conservator, does the Federal Housing Finance Agency have the statutory power to direct Fannie Mae and Freddie Mac not to purchase mortgages it deems risky? The answer to this question is yes, and if the court agrees, that answer would mean under 12 U.S.C. 4617-F, this case must be dismissed. Your honors, what this case at bottom involves is an effort by the plaintiffs in this action to transfer to two financial institutions, both of which, for the past three years, have been subject to the Federal Housing Finance Agency. Both of which, or in the aggregate, there has been infused into these institutions $190 billion of taxpayer funds, and what plaintiffs seek in this case is to unilaterally transfer, without compensation or consent, risk-flowing from a series of loans that would be made by various institutions. To be clear, the Federal Finance Housing Agency has no objections to the efforts by, in this case, Sonoma County, by the State of California, to advance, enhance, protect the environment. The objection is the effort to transfer to these enterprises in conservatorship risks associated with these loans, risks that the enterprises in conservatorship would be forced to bear without choice, without underwriting, and if I might just very quickly identify, it comes down to, two passages in the lower court's decision where the lower court committed reversible error. As we've pointed out in our papers to date, the issues presented by this case have been addressed and decided by four Federal district courts across the nation. I'm sorry, Your Honor. I said now you have the opportunity to have an appellate court decide. Absolutely, Your Honor. We must be very happy. We are happy, Your Honor. We are very happy, and we would we think the issue, the key issue on this appeal is presented crisply and ready for disposition. Isn't the key issue whether you were acting as a regulator or as a conservator? Your Honor, yes. And if you're acting as a conservator, which is your position, I guess my main question is what's the limit to your conservator power? I mean, is it limitless? No, Your Honor, and to push back a bit on what my colleagues say in their pleadings, our position is not that conservators appointed under Federal law are not subject to judicial review. This Court has an important function to serve, and it's the same function this Court addressed in its earlier decision in Sani, S-A-H-N-I, and in the Sharp decision. And that is whether the action taken by the conservator falls within the statutory powers granted to the conservator. In this case, the actions taken by the conservator involve day in and day out business decisions of ongoing financial enterprises, whether certain loans, excuse me, whether certain mortgages should or should not be acquired. The conservator, putting on its hat as the business operator of these two financial enterprises, determined in the conservator's professional judgment that the making the acquisition of these mortgages would not be consistent with the conservator's statutory mandate. And the conservator's statutory mandate is to operate these enterprises in a manner to preserve and conserve the assets, to operate the assets. Kennedy, I want to ask you a question about what would the limits be of your authority to operate as a conservator. Your Honor, the limits of the authority in this case under the statute is, and the Supreme Court has come up with the phrase, stepping into the shoes. Under the applicable statute, the conservator stepped into the shoes of the institution. And the statute specifically says the conservator has all the powers of the board of directors. It has all the powers of management. It has the powers of the shareholders. The limits, frankly, of the conservator's ability to run this institution are the ability of any board or management to run any financial enterprise. And I'm familiar with that language. I guess, can you tell me, I mean, what sort of an action might the agency take that would not be covered by its powers as a conservator? I'm just trying to figure that out. Certainly, Your Honor. And I can give as an example, and the case name is not coming to me immediately, but it was a Ninth Circuit decision issued in the late 80s. And in that case, there was a receivership, the same general powers, and the issue involved was, well, can the receiver, as part of its receivership powers authorized by Congress, adjudicate claims? And at that time, prior to the enactment of the bailout legislation in 1989, generically known as FREA, receivers didn't have that authority. So the Ninth Circuit said, well, in this case, we don't have a situation where a receiver is administering loan portfolios or collecting assets. The receiver is trying to arrogate to itself the authority to adjudicate claims between a claimant and the institution. That is a power at that time that the receiver did not have. And on that basis, the Court of Appeals did not accept the receiver's action. That is an example, Your Honor, of which I'm aware. But in this case, what we are dealing with, frankly, is the central, the core power of the conservator. The conservator has been appointed to operate these institutions. To refer, Your Honor, to the statement of the director of the agency at the time the conservator was appointed, Director Lockhart stated that the Federal Housing Finance Agency will act as the conservator to operate the enterprises until they are stabilized. To be clear, Congress did not take any extraordinary action here to try to exclude the judiciary from its classic function in our democracy. Somebody raised a claim that the county said we have a contract with Fannie Mae or Freddie Mac. They're obligated to acquire these mortgages. Could they sue the conservator? And would the Court say we have no authority, or would it go to court as an ordinary contract dispute? Your Honor, that would go to court as a contract dispute. That is not, with all respect, what this case involves. I understand. Okay. We often ask questions. Thank you. Yes, Your Honor. Yes, Your Honor. You referenced four district courts have found that this FHFA was acting under its conservator authority. And the fourth court expressly rejected this Court's decision. But I was looking at the Eastern District of New York, the town of Babylon. Is it Babylon? Yes. And the court there said it cannot imagine how it would venture to parch certain actions as regulatory in nature and others pursuant to FHFA's duties as conservator. And I guess I'm just trying to figure out how is that reconcilable with the statute's grant of some powers to the agency as regular and some as conservator? Well, I think what it recognizes, Your Honor, is in the vast array, with respect to the vast array of powers, both the regulator and the conservator exercise the same powers. There are differences, but in the vast array, they are the same. That's what led, I believe it was, former Federal District Court Judge Patricia Wald in the National Historic Preservation case of the D.C. Circuit to rule that a receiver-conservator, the agency acting as receiver-conservator can use its receiver-conservator hat, it can use its regulator hat, or it could use both. And in the vast majority of instances, the powers of the conservator and the powers of the agency as regulator overlap. And what I am not arguing here and what I would respectfully suggest this Court need not address is whether is the agency's actions as regulator, because the agency, as stated in the paper, can also take these actions as regulator. But the key here is, without regard to what the agency did or did not do as regulator, in this case, and the issuance in February 2011 makes this abundantly clear, the agency, as conservator, exercising its authority as a to operate an ongoing business, determined that these were not prudent loans. For example, Your Honor, these, as the Court is well aware, it's public knowledge, these institutions are being maintained by massive infusions of taxpayer funds. Think hypothetically, if the conservator were to decide tomorrow, based on the enterprise's current financial position, no new mortgages should be acquired. It's not consistent with stability. It's not consistent with returning them to safety and soundness. Under Plaintiff's theory, a court could come in and second-guess these business judgments. The only thing that what they referred to as the jurisdictional withdrawal withdraws is that Congress did not see a purpose in asking courts to second-guess the business judgments of the conservator when it's operating an ongoing business. And for example, Your Honor, and this was done in the language, as the Court knows, as so as not to interfere with the operations of the conservator. And this case is a wonderful example. In two weeks ---- Breyer, I only have two and a half minutes. I have one quick question before you go to rebuttal or step down. What would the effect be, adverse or otherwise, if you had to do notice and comment rulemaking? Your Honor ---- I think the district court had set a pretty expedited schedule, but I'm just curious. What's your position? Your Honor, I can answer that both from the conservator's perspective and the regulator's perspective. I'll answer first from the conservator's perspective. This category alone is just one very narrow aspect of the business of these enterprises. And every day the condition of the enterprises is changing. The markets are changing. The conservator has to have an ability to respond quickly and effectively. Maybe tomorrow an event will happen so that these enterprises should make ---- acquire no mortgages. Everything is changing. And it would manifestly tie the hands of the conservator if the conservator, either with respect to the issues in this case or any other issue relating to the ongoing business operations of the enterprise, would have to operate by rule. It would be just like, Your Honor, telling the bank officer, because the conservator in many aspects is the same as the CEO of a bank, before you decide whether to make car loans, to enact a regulation authorizing those car loans, setting forth who can and who cannot get those car loans. These are business judgments. And so what the lower court has done is transferred an intrinsically, inherently business function into some type of APA rulemaking proceeding, asking for public comment. It's not how the regulatory process works. It's not how the bank supervisory process works. And we indicated in that in our briefs, both with respect to the conservator and the agency's regulator with respect to the Philadelphia national case and Galbaer. APA rules typically don't and they cannot apply well. They're just unworkable in the context of a conservator running an ongoing business. All right. You're down to 18 minutes, 18 seconds, rebuttal. We'll give you an extra minute. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I'm Phyllis Gallagher here on behalf of the County of Sonoma. I will be addressing the Court for just 10 minutes of my 15 minutes. I want to make sure to reserve at least 5 minutes for the State of California to address the Court as amicus. If you have a clock in front of you, just be sure you do it. Thank you. I want to just start by stepping back and reminding the Court that we're here on an appeal of a preliminary injunction. This is not an appeal of a motion to dismiss. The agency would like this Court to go right to the merits, but I just want to remind the Court that the preliminary injunction analysis requires a likelihood of success on the merits, which the county has established, but also a careful weighing of the likelihood of success on the merits with the harms. So I want to just start by addressing briefly those harms before I get to the likelihood of success on the merits prong. Here, there is absolutely no harm to the agency by this injunction. The district court has simply required the agency to commence notice and comment rulemaking to take a second look with a public process at its decision, while specifically leaving its actions in place in full force and effect while the case proceeds on the merits. I would say leaving its actions in place. Doesn't that tie the hands of the FHFA? It does not tie the hands of the FHFA to have to go back and simply do a notice and comment rulemaking process while the substance of what it was trying to accomplish with its directives to the regulated entities remains in place. You mean there can be no investment in these mortgages until the case is over? Yes, that is still in place. The regulated entities are not dealing in mortgages that have PACE encumbrances, and that is ongoing while the case is proceeding on the merits. And I think it's important that this Court know as well that the agency is going to have its day in court on the merits very soon. Cross motions for summary judgments have been fully briefed and are scheduled to be heard by the district court on May 3rd. In contrast to the lack of harm to the agency, the public You'll be sure to let us know the outcome of that if we haven't decided this case by then. We will, Your Honor. In contrast to the lack of harm to the agency, if the public comment process proceeds, the process is very important to the county. Prior to the agency's taking its actions, directing the regulated entities not to deal in these mortgages, the county had the largest and most successful PACE program in the country, had funded thousands of renewable energy projects in the county, significant reduction in greenhouse gas emissions already, and was poised to be a model for the 26 other states in the country that have authorized PACE programs. All of this came to a screeching halt when the agency said that these mortgages pose intolerable risk to the regulated entities. The county appreciates the opportunity to now have the agency revisit that decision through a public process. I would like the court to take judicial notice of what has transpired since the injunction took place on the FHFA's website is information regarding the rulemaking process. In January, the agency issued its advance notice of proposed rulemaking pursuant to the injunction. The comment period just closed. The agency received over 400 comments on this issue, not including thousands of comments in the form of form letters by concerned citizens. The comments were from a diverse range of interests, including the U.S. Department of Energy, which has funded several programs, environmental organizations, federal legislators. So this process is important to the county that it be seen through. And without any harm to the agency, we ask that this court not dissolve the injunction. Are you saying that they were not acting as a conservator, or you're saying it doesn't matter to you whether they were acting as a conservator, they're also acting as a regulator? I'm trying to understand what your position is, because it appears that, you know, a decision not to invest in a class of mortgages that the conservator, in this case FHFA, deems risky seems like an appropriate action for a conservator. It is our position, Your Honor, that this action could not, was not, and could not have been taken under the guise of conservator powers. Because? Safety and soundness concerns are specifically delegated to the agency as regulator by Congress, as set forth in section 4513 of the Safety and Soundness Act. As the district court held, substantive rulemaking is not a power of the conservator. And the cases that the agency relies on to say that this is quintessential conservator powers are not helpful in the least. They deal with institutional conservators, the FDIC and the RTC, dealing with very specific assets, selling a home, foreclosing on a property, repudiating a contract, not at all analogous to the situation we have here where the agency has issued a legislative rule saying that these mortgages pose intolerable risk to the regulated entities. The most analogous action that the agency has taken, and it took pursuant to notice and comment rulemaking. And we're asking. Suppose they said, you know, we find stocks are not a good investment these days. We only want you to invest in bonds. Would that, that wouldn't be the action of a conservator? If it amounts to substantive rulemaking under the APA, it would not. Well, that's, the answer is, you're saying the answer is it would not. They could not say we want only investments in bonds, not in stocks. That wouldn't take a regulation. It's not within the power of a conservator? It, it could be, Your Honor. I can't speak to that specific action. The only matter that's before you is the action that the agency took with respect to case mortgages. I know. I just told, I think, your last counsel, I, I, questions are not only about the specific case. I understand that, Your Honor. And we're not here to ask this Court or the district court to establish a global rule about what the agency can and cannot do as conservator or to tie the hands of the agency. So it's a better practice, if you want to win a case, not to just say, this is, this would be the rule in this case, but to be able to help understand what the agency can and can't do, what type, type of actions it can take. And it does seem, on the face of it, that if an agency is taking over an institution and has all the normal powers of those running the institution, it could make a decision as to what it wants to invest in. Well, I'd like to direct the Court to the, the Safety and Soundness Act specifically. Because in that act, it, it, the Congress specifically delineated regulatory powers and conservator powers, and did not intend that simply by placing these that the conservator powers would swallow the regulatory powers. The, the agency has broad, broader concerns as regulator than the bottom line of the corporations. Congress specifically has entrusted the agency with not only the safety and soundness of the enterprises, but liquidity, affordability, and stability in the housing market, and the public interest, and has specifically dictated that regulations taken by the, the agency as regulator be pursuant to notice and comment rulemaking. Why shouldn't the agency have the discretion to decide whether it's acting as regulator or, or conservator? The agency has discretion as long as the actions it are, is taking are within the conservator powers. And in this case, and, and I think what I. I don't mean, that's why you don't have discretion. It's a matter of law. The agency, in, in order for the anti-injunction statute to apply, the agency's actions must be authorized as conservator. And it is our position that the agency's actions in this case were not because they amounted to substantive rulemaking. And so I think it's important that I address a little bit the APA defenses here, because that highlights the, the, the broadness and the, and the scope of what the agency did here. The agency made a pronouncement that these were significant and safe, presented significant and safety and soundness concerns. Essentially instructed the, the regulated entities to not deal in these mortgages. A flat out ban on a practice that had previously been allowed under safety and soundness principles. Routine tax assessments that have always been accommodated by the regulated entities and by their supervisor. Your argument is that there's a conservator, but they can't take any action relating to the safety of the, and soundness of the operations, unless they pass a regulation. Yes, that is our position. And isn't that their main function, to protect the safety and soundness of the institution's operations? As regulator, it is. As conservator. So basically, they're a conservator, but they're, most of the powers they exercise, the important ones, can only be as a regulator. I wouldn't say the important ones. Well, the ones that protect the safety and soundness of the institution. That. Those would not, you wouldn't say those are the important ones? That's important, Your Honor, but that's a specific function of the regulator. And when the agency is protecting the safety and soundness concerns through a rule, then it must comply with notice and comment. I am running into the time of the Attorney General, so I would like to just wrap up by asking that this court affirm the preliminary injunction and allow the notice and comment process to proceed while the district court addresses the merits of the procedural APA claim. Thank you, Kathy. Thank you. We'll give you your five minutes. Thank you, Your Honor. Janelle Richards, Supervising Deputy Attorney General for the state of California, as amicus. If the anti-injunction provision weren't at issue in this case, it would be very straightforward. The agency issued a ban on PACE, and it was not engaged in interpretation of the statute. The DC Circuit summed it well in a case called Catholic Health Initiatives versus Sebelius, the flatter a rule is, the harder it is to conceive of it as merely spelling out what is in some sense latent in a statute or regulation. And the Safety and Soundness Act is clear that when the agency issues a substantive rule, it's required to comply with notice and comment rulemaking. The agency argues that the anti-injunction provision changes everything. Once it appoints itself as conservator, as it did here in 2008, it can deem virtually any action it takes as a conservatorship action. The curtain comes down, there's no notice, there's no public participation, and there's no judicial review. And the issue here is that that very extreme position is not consistent when the statute is read as a whole. As we've discussed, the act gives the agency very many powers beyond simply preserving and conserving the assets, wearing its conservator hat. These include not only ensuring that the entities operate in a safe and sound manner, but that they also operate consistent with the public interest. There are various provisions in- And that would seem to be the same thing. In some instances, it most likely means something broader, otherwise that public interest language would be superfluous. There are- More than safety and soundness. Yes. Certainly when you're acting in safety and soundness, you're acting in the public interest. Yes, Your Honor. I would agree with that. The statute is also clear that the agency as regulator has responsibilities to make rules, establish standards, set out rules relating to the prudential management of the enterprises. It's very clear in section 4511 that the agency shall exercise that regulatory responsibility. And moreover, it says there expressly that the agency's role as conservator doesn't limit, and it uses the word limit, doesn't limit the authority as regulator. And finally, as the district court noted, in enumerating the powers of the agency as conservator, the Congress very pointedly did not include rulemaking responsibilities as conservator. The district court's interpretation of the statute is an attempt to harmonize all of these provisions, respecting the agency's very important role as conservator, which means they've got to go in there and put the entity's financial house in order, take quick action, but also recognizing that there are additional and special responsibilities that fall on the agency as regulator. And so the simple rule here is that where the agency takes action, that under established case law constitutes a substantive rule, the agency has to comply with section 4526B of the Safety and Soundness Act that requires a rulemaking. Now, this doesn't mean that the agency's hands are tied as conservator. I think we would be, probably would not be here today if the agency, for example, had issued some kind of limited protection relating to purchase of PACE mortgages as conservator until such a time as it could do a full rulemaking here. That respects both powers. We note here also that the preliminary injunction that the court issued does not disturb any of the agency's previous actions relating to PACE. It doesn't, for example, vacate the letter that general counsel sent after briefing before the district court was done, where the general counsel purported to redo the action wearing his conservator hat. That's left in place. All that the preliminary injunction requires is a rulemaking. And that's something that agencies with very important responsibilities do every day. And in fact, this agency just- And when would the rulemaking be complete? When will it be complete? The preliminary injunction in its current form requires the proposed rule be issued by May 25th, and it has a 30-day comment period. Because of the stay and the various things that happen in this court, there is no longer a requirement in that PI that they issue a final rule. So that's going to be left for whatever remedy the judge imposes, if any, after judgment on the merits. And as my co-counsel mentioned- The summary judgment motions will be heard on May 3rd? That's right, Your Honor. We have full briefing on all of the issues that we've discussed today. I suppose it's conceivable that there won't be summary judgment issued for either side. Because this is an administrative record case, it's fairly certain that these issues will be dispositive. There are no triable issues of fact. So it's most appropriate that these issues be left for the district court to rule on the merits, on full briefing, on the administrative record. And since there is no harm to the agency, we respectfully request that the court affirm the preliminary injunction. Thank you, Your Honors. Thank you, Counsel. Counsel, I don't know, you have a minute and 17 seconds, but we'll give you a little more time if it would be helpful. Could you tell us the relationship of the Safety and Soundness Act to this issue? And what your view is on how it limits your powers as conservator? It in no way limits the provisions I believe counsel are referring to, are referring to the provisions applicable to the regulator in conducting examinations and supervising entities both inside and outside of conservatorship. What counsel conveniently ignores are the precise words of the conservatorship provisions which direct the conservator to preserve and conserve the assets of the conservator, the conserved entities, Fannie and Freddie here. Under broad case law, regulatory rulings, court decisions, there's no question that the preservation and safety and soundness, the conservator is directed to operate these enterprises as a prudent business person, a prudent banker, and the conservator's basically here as a banker for this purpose, will make loans or not make loans based on is this safe, is it consistent with the enterprise's mission, and is there a sufficient capital, and there is no power left on the table here. The conservator has the full range of authority to assure that the institution operates safely and soundly. And if I might, Your Honor, in further response to one of your questions earlier, the FHFA, in looking at the Court's decision, with all respect, the Court made one error, and it appears of its slip opinion on page 16 and page 19. And this gets, Your Honor, to your question, sort of what's the problem? You've already started the process. Why not finish? I'd like to just answer that further. At page 16 of the Honorable Judge Wilkins' decision, she states, the FHFA has directed Fannie and Freddie prospectively to refrain from purchasing any mortgage loan secured by property with an outstanding PACE obligation. This appears to amount to substantive rulemaking. So the judge attached a label. Rather than looking at the underlying action of the conservator, the fact that the conservator was exercising a core power assuring the safety and soundness of loans, the judge attached a label to it. After attaching that label on page 19 of the slip opinion, the judge states, substantive rulemaking is not appropriately deemed action pursuant to FHFA's conservatorship authority. The FHFA's policymaking with respect to PACE programs does not involve succeeding to the rights or powers of the enterprises taking over their assets, collecting money due, or operating their business. And with all respect, Your Honor, each one of those statements we believe is wrong. The – every aspect of this decision involved protecting the assets, succeeding to the rights of management, succeeding to the rights of the board. What the court did, and if this is allowed to proceed, what we will be diverting enormous agency resources to will be defending actions just like this, defending business decisions because some litigant or some court slaps a label, well, there's really a policy in there, we're going to call that substantive rulemaking, you have to go through the APA. That's what happened here, Your Honor. And I just have one question. The fact that this is a preliminary injunction, can you respond to that? Yes, Your Honor. The hearing next week, really, on the PI, it highlights the manifest wastage of assets, diversion of resources, use of the taxpayer dollars that were intended to restore these enterprises, because what we will be doing at that hearing 2 weeks from tomorrow is attempting to prove to the lower court that this decision to bar PACE loans, which will transfer unilaterally risk, was not arbitrary and capricious. It's precisely what Congress intended to not subject the conservator to, having to go to court. You're talking about the summary judgment hearing? Next week, 2 weeks, Your Honor, yes. And on the basis of the record, there's no live testimony? There will be no live testimony based on the record. The court will go in making an argument in court? Our papers, Your Honor, which we will expand upon in court, argue in court, try to use the existing record. I'm trying to see about this tremendous waste of taxpayers' money if we go ahead with that hearing. Your Honor, you're going to have to go to court and make an argument. We're going to have to go to court, Your Honor, to make an argument to prove that an action that has been totally removed from judicial review, a business decision, was not arbitrary and capricious under the APA. We're trying to examine the facts behind your somewhat hyperbolic argument about the tremendous damage that's going to be done if you have to go ahead and make an argument, how this is going to frustrate Congress, waste tremendous amounts of the taxpayer's money. I don't know what your salary is, but I doubt that it'll waste that much, unless you get paid more than we do. Your Honor, I will respectfully calm down just a bit and just make the point that every dollar spent, if it's $100, if it's $1,000, if it's $1 million, is a waste of taxpayer dollars. These institutions, both of them, would be grossly insolvent if it wasn't for the infusion of, I believe, $190 billion to date. What I'm trying to calm down, calmly state, is that this should not be allowed to proceed, because even if it's only an additional $50,000, $100,000, why should the agency spend another $50,000, $100,000 of taxpayer dollars to prove that certain loans, the barring of the purchase of certain mortgages, was not arbitrary and capricious? That's something that, as Congress set up the statute, does – I think you've answered Judge McGee's question. All right. Thank you. We're way over time. Thank you. Thank you, Your Honor. The case is argued will be submitted. The Court will stand in recess for a brief period. All rise.
judges: Reinhardt, Noonan, Murguia